**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| LAUREL D. LIBBY, State Representative of Maine House District 90, RONALD P. LEBEL, WENDY MUNSELL, JASON LEVESQUE, BERNICE FRASER, RENE FRASER, and DONALD DUBUC, <br><br> Plaintiffs, <br><br> v. <br><br> RYAN M. FECTEAU, in his official capacity as Speaker of the Maine House of Representatives, and ROBERT B. HUNT, in his official capacity as Clerk of the House, <br><br> Defendants. | Civil Action No. _____ <br><br><br><br> **VERIFIED COMPLAINT** <br><br><br><br> INJUNCTIVE RELIEF SOUGHT |

## INTRODUCTION

1.      Along a strict party-line vote, led by the Speaker of the Maine House of Representatives, the House unconstitutionally stripped a duly elected Republican member of her right to speak and vote on the House floor—disenfranchising the 9,000 Mainers in her district—in retaliation for protected speech on a highly important and hotly debated matter of public concern.

2.      Rep. Laurel Libby (R-Auburn) represents Maine's House District 90. A mother of five, including three girls, Rep. Libby has a been a staunch advocate of protecting the rights of Maine girls in athletics. She is an outspoken critic of Maine's state policy allowing boys who identify as transgender to compete in girls' sports.

3.      Rep. Libby recently posted on social media to call attention to the Maine high school girls indoor track and field state championship. A Greely High School student who competed as a boy last year but now identifies as transgender took first place in girls' pole vault. That first-place finish propelled the Greely girls' team to win the team girls track and field state championship by a single

point. The championship was a public event, was streamed online, and the names, schools, and photographs of the winners were all posted publicly.

4.      Rep. Libby's social media posts went viral, garnering national media attention and placing Maine's policy under the microscope. Rep. Libby made several appearances on national television and radio broadcasts to bring further attention to the issue. The posts even captured the attention of the White House, prompting President Donald Trump to threaten Maine's allocation of federal education funding in a highly publicized exchange with Maine Governor Janet Mills. Three federal agencies have launched investigations into the Maine Department of Education and its compliance with Title IX's prohibition on sex-based discrimination in federally funded education programs.

5.      Nothing is particularly surprising about this reaction; strong majorities of Americans oppose allowing boys to compete in girls' sports. The obvious physical advantage of boys on average allows them to jump higher, run faster, and throw harder than girls. Indeed, permitting boys to compete against girls can present a serious threat to girls' physical safety. It also severely distorts the fairness of the competition.

6.      The Maine Democrat-controlled House took swift retaliatory action against Rep. Libby for shining a light on the State's controversial policy. By a party-line vote of 75-70, the House passed a resolution censuring Rep. Libby, declaring her posts to be "reprehensible," unethical, and "incompatible with her duty and responsibilities as a Member of th[e] House." The censure resolution provides that Rep. Libby "must accept full responsibility for the incident and publicly apologize to the House and to the people of the State of Maine." When Rep. Libby refused to apologize, the House Speaker prohibited her from speaking or voting on the House floor.

7.      Whatever one thinks of males who identify as transgender competing in girls' and women's sports, the issue and Maine's policy is of public importance and subject to ongoing debate.

As Governor Mills recently put it: "If [lawmakers] wish to change [Maine's policy], they have the authority to change it." "**It's worthy of a debate, a full, democratic debate.**"[1] But the House is actively barring one of its staunchest advocates on the issue from participating as a full member of the House. Just last week, a representative introduced a bill that would reverse Maine's policy. Yet Rep. Libby is barred from speaking or voting on that proposed legislation—or any other issue, large or small, that may come before the House for the rest of her elected term.

8.      While legislatures have authority to discipline their members, stripping them of their voting rights is another matter. The U.S. House of Representatives, for example, believes it violates the Constitution to deprive sitting members of their right to vote. And the reason why is illustrated here: the Speaker's actions have effectively disenfranchised Rep. Libby and her 9,000 constituents in House District 90, some of whom are plaintiffs here.

9.      The heavy-handed, partisan actions violate the First Amendment and the Equal Protection, Due Process, and Guarantee Clauses of the U.S. Constitution. This Court should grant injunctive relief and protect Rep. Libby's constituents' representation in the House.

**PARTIES**

10.      Plaintiff Laurel D. Libby is a duly elected representative of the 132nd Maine Legislature. Rep. Libby represents Maine House District 90, composed of parts of the City of Auburn and the Town of Minot. She is currently serving her third term as a state representative. Rep. Libby meets all the state constitutional requirements to serve in the Maine House: she is over the age of 21, she has been a U.S. citizen for over five years, she has resided in Maine and House District 90 for more than one year, and she continues to reside in House District 90. *See* Me. Const. Me. Const. Art. IV, Pt. 1, §4.

---

[1] Michael Shepherd, *Janet Mills says Maine's transgender athlete policies are 'worthy of a debate,'* Bangor Daily News (Mar. 3, 2025), https://perma.cc/6L9Y-PV6B (emphasis added).

3

11.     Plaintiff Ronald P. Lebel is a resident of Auburn, Maine. He resides in Maine House District 90. Lebel voted in the 2024 state legislative election.

12.     Plaintiff Wendy Munsell is a resident of Auburn, Maine. She resides in Maine House District 90. Munsell voted in the 2024 state legislative election.

13.     Plaintiff Jason Levesque is a resident of Auburn, Maine. He resides in Maine House District 90. Levesque voted in the 2024 state legislative election.

14.     Plaintiff Bernice Fraser is a resident of Minot, Maine. She resides in Maine House District 90. Fraser voted in the 2024 state legislative election.

15.     Plaintiff Rene Fraser is a resident of Minot, Maine. He resides in Maine House District 90. Fraser voted in the 2024 state legislative election.

16.     Plaintiff Donald Duboc is a resident of Minot, Maine. He resides in Maine House District 90. Duboc voted in the 2024 state legislative election.

17.     Defendant Ryan M. Fecteau (D-Biddeford) is Speaker of the Maine House of Representatives. He is a resident of this district for purposes of this action because he performs his official duties here. He is sued in his official capacity only.

18.     Defendant Robert B. Hunt is the clerk of the House. He is a resident of this district for purposes of this action because he performs his official duties here. He is sued in his official capacity only.

## JURISDICTION AND VENUE

19.     The Court has subject-matter jurisdiction under 28 U.S.C. §§1331 and 1343 because this action arises under the Constitution and laws of the United States.

20.     The Court has authority under 28 U.S.C. §§2201 and 2202 to issue the relief sought.

21.     Venue lies in this district under 28 U.S.C. §1391(b)(1) and (2).

## STATEMENT OF FACTS

*Males Who Identify as Transgender Competing in Female Sports Is a Hotly Debated Issue That Has Prompted Responses by States and the Federal Government*

22.    The issue of males who identify as transgender competing in female sports has been at the forefront of public debate for the past several years.

23.    Americans have grown increasingly against males participating in female sports in recent years. A January 2018 PRRI survey found that 43% of Americans were opposed to allowing male students who identify as transgender to compete against female classmates. Daniel Cox et al., *Americans Differ on Participation of Male, Female Transgender Students in Team Sports*, PRRI (Jan. 25, 2018), https://perma.cc/SJQ5-A7Y2. A June 2022 NPR/Ipsos poll found that 63% of Americans were opposed to allowing males who identify as transgender to compete on sports teams that align with their gender identity. Melissa Block, *Americans are deeply divided on transgender rights, a poll shows*, NPR (June 29, 2022), https://perma.cc/4WGF-XV8S. A May 2023 Gallup poll found that 69% of Americans said transgender athletes should only be allowed to compete on sports teams that "conform with their birth gender," up from 62% in 2021. Jeffrey M. Jones, *More Say Birth Gender Should Dictate Sports Participation*, Gallup (June 12, 2023), https://perma.cc/ZYS4-QN37. And a January 2025 New York Times/Ipsos poll found that 79% of Americans, including 67% of people who identify as Democrats or leaning Democrat, believe biological males who identify as women should not be allowed to participate in women's sports. Jackson Thompson, *NYT poll finds majority of Democrats oppose transgender athletes in women's sports*, Fox News (Jan. 18, 2025), https://perma.cc/TVD3-MGJY.

24.    Many who oppose boys and men competing in girls' and women's sports recognize the obvious, inherent physical advantages males have over females, which can present a serious risk to girls' and women's safety. In 2014, a transgender MMA fighter Fallon Fox brutally defeated her female opponent Tamikka Brents in just two minutes, leaving Brents with a concussion, a fractured orbital bone inside her skull, and seven staples in her head. Bhavesh Purohit, *When transgender fighter*

*Fallon Fox broke her opponent's skull in MMA fight*, Sportskeeda (Sept. 30, 2021), https://bit.ly/4i8k2Ey. In 2022, North Carolina volleyball player Payton McNabb suffered serious injury after a transgender-identified male player spiked a ball at her head, rendering her unconscious and causing her partial paralysis. Ashley McClure, *After a Male Caused Her Partial Paralysis, Female Volleyball Player Payton McNabb Now Fights to Protect Women's Sports*, Indep. Women's Forum, https://perma.cc/CX43-9WZG. In 2023, a Massachusetts female high school field hockey player was hospitalized for significant facial injuries, including loss of teeth, after being hit in the face by a ball struck by a male opponent. *Massachusetts school calls for change after female field hockey player hurt by boy's shot*, CBS News (Nov. 6, 2023), https://perma.cc/CLJ4-TUB7.

25.     Scrutiny of the issue and public debate has led to action in state legislatures across the country. Since 2020, more than half the States have prohibited transgender individuals from participating in interscholastic athletics consistent with their gender identity. Movement Advancement Project, *LGBTQ Youth: Bans on Transgender Youth Participation in Sports* (2025), https://perma.cc/C69P-2CNS.

26.     Maine went in the opposite direction. In 2021, the Maine Legislature passed and Governor Mills signed LD1688 into law. *See generally* P.L. 2021, Ch. 366. The bill enshrined protections across Maine law for "gender identity," defined as "the gender-related identity, appearance, mannerisms or other gender-related characteristics of an individual, regardless of the individual's assigned sex at birth." 5 MRS §4553(5-C).

27.     Maine law "recognize[s] and declare[s] to be a civil right" the "opportunity for an individual at an educational institution to participate in all educational … and all extracurricular activities without discrimination because of … gender identity." *Id.* §4601. Maine law makes it "unlawful educational discrimination" to "[e]xclude a person from participation in, deny a person the benefits of, or subject a person to, discrimination in any academic, extracurricular, research,

occupational training or other program or activity" or "[d]eny a person equal opportunity in athletic programs" based on "gender identity." *Id.* §4602(1)(A)-(B).

28. Transgender sports were at the forefront of the 2024 presidential election. The *Wall Street Journal* identified it as a "2024 sleeper issue." Editorial Board, Opinion, *Transgender Sports Is a 2024 Sleeper Issue*, Wall St. J. (Oct. 13, 2024), https://perma.cc/25Z6-HF95. President Trump campaigned aggressively to "keep men out of women's sports." *Trump: 'We will of course keep men out of women's sports,'* Wash. Post. (Nov. 3, 2024), https://bit.ly/41n2mxC. That platform resonated with voters. *E.g.*, Rob Harris, *Donald Trump's trans athletes rhetoric resonated with voters concerned about sporting fairness*, Sky News (Feb. 6, 2025), https://bit.ly/4h4EXH5. A national exit poll found that 70% of voters saw President Trump's opposition to boys in girls' sports (and bathrooms) as important to them. Macy Petty, *New Exit Polls Confirm the Surprising Key Issue in the 2024 Election*, Concerned Women Am. (Nov. 18, 2024), https://perma.cc/35XV-WSUF.

29. Shortly after taking office, President Trump signed an executive order to rescind federal funds from educational programs that permit males who identify as transgender to compete against females. Exec. Order No. 14,201, 90 Fed. Reg. 9,279 (2025). The executive order drew praise from countless female athletes and parents.



*Trump signs executive order banning transgender athletes from women's sports*, ABC News (Feb. 5, 2025), https://bit.ly/4bHj3sB.

30.    The next day, the NCAA banned transgender athletes from competing in women's sporting competitions. Kiara Alfonseca, *NCAA changes transgender participation policy in response to executive order*, ABC News (Feb. 6, 2025), https://perma.cc/P6S9-CLUA. But several state-level associations signaled they would continue to follow state law. Steve Karnowski, *For high school sports, decisions loom: Follow Trump or state law on transgender athletes*, AP (Feb. 7, 2025), https://bit.ly/4i5LClQ. The Maine Principal's Association said it would continue to allow boys who identify as transgender to compete in girls' sports, notwithstanding President Trump's executive order. Patty Wright, *Transgender female athletes can still compete under state law, Maine sports governing body says*, Me. Pub. (Feb. 7, 2025), https://perma.cc/5RAN-8MWH.

**Rep. Libby's Public Advocacy and the Federal Government's Response**

31.    On February 17, 2025, Rep. Libby posted on Facebook about a high school student who won the Maine girls class B pole vault state championship. *See* Representative Laurel Libby,

Facebook (Feb. 17, 2025), https://perma.cc/CL35-A558. Libby observed that the student previously "was competing in boy's pole vault" and "had [a] fifth place finish." *Id.* "So all of this transpired in the last year, with the full blessing of the Maine Principals' Association." *Id.* The post showed the athlete on the boys' medal podium side-by-side with the athlete on the girls' podium this year.



*Id.* Rep. Libby also posted about the matter on X (formerly Twitter). *See, e.g.,* @laurel_libby, X (Feb. 18, 2025, 5:45 PM), https://perma.cc/UB86-PHJD.

32.     The state championship results were publicly reported online with students' full names, schools, and photos. *See Class B State Meet 2025: Girls Pole Vault Finals*, MaineTrackXC, https://perma.cc/22SA-T99Q.

33.     Coverage of the event and photographs of the first-place winner and other participants are publicly accessibly on the internet and social media. *See, e.g.*, Dan Zaksheske, *Trans-Identifying Male Athlete Wins Maine State Title In Girls' Pole-Vaulting*, OutKick (Feb. 19, 2025), https://bit.ly/3F23GOR (identifying student's current and prior names and school); Hudson Crozier, *Male Athlete Sweeps Women's Event Days After State Refused To Enforce Trump's Rule*, Daily Caller (Feb. 18, 2025), https://perma.cc/P6ZM-3V5N (same and noting with hyperlinks that "[p]hotos posted online and media coverage of the event confirm [the male student's] identity"); @bourne_beth2345, X (Feb. 18, 2025, 12:50 PM), https://perma.cc/7JNV-6N6Z (identifying student by name with photo of student on the medal podium); @icons_women, X (Feb. 18, 2025, 1:32 AM), https://perma.cc/QH67-5QWG (identifying student by name with photo of student holding "STATE CHAMPS" poster and the caption "[Name] with 1st in pole vault!!"); @mainerunningphotos, flickr (Feb. 17, 2025), https://perma.cc/XJ3G-RMNC (photo of student pole vaulting identified by name); @mainerunningphotos, flickr (Feb. 17, 2025), https://perma.cc/2FG2-BJXA (photo of student pole vaulting); @mainerunningphotos, flickr (Feb. 17, 2025), https://perma.cc/63VS-F2VX (same).

34.     The male student's first-place pole vault finish propelled the Greely High School's girls' team to win the overall state championship. The school edged out runner-up Freeport—whose two pole vaulters finished tied for second—by a one-point margin. Derek Veilleux, *Greely Edges Freeport By 1 Point to Win Class B Girls Title*, MaineTrackXC (Feb. 21, 2025), https://perma.cc/TU6F-Q426 (including team photo with pole vaulter and results). The male student's victory won Greely the overall class B indoor track and field state championship.

35.     Rep. Libby's social media posts about the girls' state championship went viral. Her initial Facebook post generated over 100,000 reactions, 60,000 comments, and 18,000 shares. Her initial X post generated over 686,000 views. As one media outlet reported, "Maine state lawmaker Laurel Libby drew attention to the controversy." Amanda Prestigiacomo, *Boy Wins Girls' Pole Vault Championship In Maine Days After State Pledged To Defy Trump Order*, DailyWire (Feb. 18, 2025), https://perma.cc/H7BY-H2KY.

36.     Over the next few days, Rep. Libby appeared on several national television and radio broadcasts and continued to post on social media, highlighting and criticizing Maine's policy permitting boys who identify as transgender to compete in girls' sports and the "Maine Democrat Majority" and calling on the federal government to act, consistent with President Trump's executive order. *E.g.*, @laurel_libby, X (Feb. 19, 2025, 10:23 PM), https://perma.cc/AKT2-ZTEY ("Honored to serve as the voice for our girls in this fight—they deserve so much better leadership than what the Maine Democrat Majority is offering!"); Representative Laurel Libby, Facebook (Feb. 19, 2025), https://bit.ly/3D5c2oB ("Maine's Democrat Majority is openly defying President Trump's Executive Order designed to keep biological males out of girls' sports. … [O]ur girls deserve better.").

37.     On February 20, three days after Rep. Libby's initial post, President Trump during public remarks called out Maine for its transgender sports policy and threatened to withhold federal funding. Fredrick Placey, *Trump threatens to withhold federal money over transgender students*, WMTV (Feb. 20, 2025), https://perma.cc/SJ8Y-G9RZ. Rep. Libby shared President Trump's remarks on social media and commented, "President Trump pledges to step in to protect girls' sports in Maine and clean up the failure by both the Maine Principals' Association and the Maine Democrat Majority!" Representative Laurel Libby, Facebook (Feb. 20, 2025), https://bit.ly/4bvtL55. Another post stated, "With $280M+ per year on the line in federal funding, this shouldn't be a hard choice for Maine

Democrats. It's time to restore girls' sports and protect the funding for our schools." @laurel_libby, X (Feb. 21, 2025, 12:34 PM), https://perma.cc/S9SM-2F6V.

38.    The next day, during a governors' event at the White House, President Trump called out Governor Mills over Maine's transgender sports policy in a tense exchange. Trump asked, "I understand Maine—is Maine here, the governor of Maine?" "I'm here," Mills replied. "Are you not going to comply with it?" Trump asked. Mills answered, "I'm complying with state and federal laws." "Well, we are the federal law," Trump said. "You better do it. You better do it, because you're not going to get any federal funding at all if you don't. And by the way your population … doesn't want men playing in women's sports. So you better comply," Trump continued. Mills then replied, "See you in court." Trump concluded the exchange, "Good, I'll see you in court. I look forward to that. That should be a real easy one. And enjoy your life after governor, because I don't think you'll be in elected politics." Lexie Schapitl, *'See you in court': Trump and Maine's governor spar over trans athlete order*, NPR (Feb. 21, 2025), https://bit.ly/4i4Olfa. The heated exchange made endless headlines.

39.    President Trump again called out Governor Mills the next day during his remarks at the Conservative Political Action Conference. "You saw Maine yesterday, right? The governor of Maine," Trump said, eliciting boos from the audience. "She's fighting to keep men in women's sports. … Let her do that fight. Let them all do that fight, because I think that's about a 90/10 issue, and I can't figure out who the 10% are." @TheMaineWire, X (Feb. 22, 2025, 3:15 PM), https://bit.ly/3Xt76k2.

40.    Federal agencies have since announced investigations into Maine's policy. The U.S. Department of Education's Office of Civil Rights launched a self-initiated probe into the Maine Department of Education and Maine the Maine School Administrative District #51, which has jurisdiction over Greely High School, for potentially violating Title IX, which bars sex-based discrimination in federally funded education programs. Press Release, U.S. Dep't of Educ., *Office for*

*Civil Rights Launches Title IX Violation Investigations into Maine Department of Education and Maine School District* (Feb. 21, 2025), https://perma.cc/9QYG-YYRT. The U.S. Department of Health and Human Services' Office of Civil Rights likewise initiated a Title IX compliance review of the Maine Department of Education, including the University of Maine System. Press Release, U.S. Dep't Health & Hum. Servs., *HHS' Civil Rights Office Acts to Keep Men out of Women's Sports* (Feb. 21, 2025), https://perma.cc/WXM4-HGEW. The United States Department of Agriculture also initiated a compliance review of the University of Maine. Press Release, U.S. Dep't of Agric., *USDA Launces Compliance Review of University of Maine for Title IX Violations* (Feb. 22, 2025), https://perma.cc/5QLJ-MDN4.

41.    U.S. Attorney General Pam Bondi also sent Governor Mills a letter, putting Maine "on notice" that "if these or other federal investigations show that the relevant Maine entities are indeed denying girls an equal opportunity to participate in sports and athletic events by requiring them to compete against boys, the Department of Justice stands ready to take all appropriate action to enforce federal law." Letter from Pam Bondi, U.S. Att'y Gen., to Janet Mills, Governor of Maine (Feb. 25, 2025), https://perma.cc/8HJM-77GV.

**The Maine House Retaliates Against Rep. Libby**

42.    After Rep. Libby's advocacy went viral, Maine House Speaker Ryan Fecteau (D-Biddeford) asked Rep. Libby to take down her initial Facebook post. Rep. Libby refused.

43.    Speaker Fecteau then publicly responded to Rep. Libby by urging Mainers to "reject hateful rhetoric from divisive politicians." "All kids, including transgender students, deserve better than to be used as political fodder for internet bullies." Speaking to transgender students, he added, "I see you and I stand with you." "You deserve to be your true self at home, at school and when participating in sports." Susan Cover, *Mainers should 'reject hateful rhetoric,' Maine House speaker says in*

*response to GOP post opposing transgender student participation in sports*, Spectrum News (Feb. 20, 2025), https://perma.cc/JL3C-EDEN.

44.     The next day, Speaker Fecteau penned an op-ed in the *Bangor Daily News*, framing Rep. Libby's social media activity as an issue of "privacy of Maine kids" that can "be downright dangerous for the young person involved" and "impact their health and their safety, at school, and in their communities." He added, "Kids shouldn't have to worry about a politician sharing images of them online without their consent." He pledged "to stand up to elected officials who violate the privacy of youth for cheap political stunts." Ryan Fecteau, Opinion, *Maine kids should never be political fodder for internet bullying*, Bangor Daily News (Feb. 21, 2025), https://perma.cc/KD4Y-E7KZ.

45.     As explained, the student's name, school, and image were widely disseminated online, separate from Rep. Libby's initial post. *Supra* ¶¶32-33.

46.     Indeed, the photos Rep. Libby posted were taken at a public forum on the victory podium at state track meets. The entire point of the victory podium is to publicize the winner of the event.

47.     Moreover, the photos themselves make the very point that Governor Mills concedes is "worthy" of a "full, democratic debate." They illustrate that the winner had an obvious physical advantage in terms of height and development over the female competitors in the pole vault.

48.     The complaint that Rep. Libby's speech somehow threatened child safety is irreconcilable with the fact that her speech addresses what occurred at a public competition with publicly available photos already on the internet. There is nothing illegal or threatening about Rep. Libby's posts, and at no point has she enabled or encouraged any attacks on any individual student. Instead, she has focused on the state government's unfair policy and the rights of girls to compete fairly and safely in high school athletics.

49.    Rep. Libby kept the pressure on Maine Democrats on social media: "The people of Maine (especially our girls) deserve so much better than the 'leadership' that @GovJanetMills and the Maine Democrat Majority are currently offering." @laurel_libby, X (Feb. 23, 2025), https://bit.ly/41vkCEY. "@GovJanetMills and Maine's Democrat Majority are knowingly and willingly allowing the erasure of Maine girls, by continuing to allow biological males to compete in (and dominate) girls' sports." @laurel_libby, X (Feb. 24, 2025), https://perma.cc/Z35L-ARGD.

50.    On February 25, 2025, Maine's Democrat-controlled House passed a resolution along strict party lines (75-70) censuring Libby for her initial Facebook post with the photos of the transgender student on the medal podium. H.R. Res. 1, 132nd Leg., 1st Reg. Sess. (Me. 2025), https://perma.cc/JU85-VNTS (Resolution). The resolution provides that Rep. Libby "posted a statement criticizing the participation of transgender students in high school sports"; the "post has received national attention that she has amplified by appearing on national television and radio broadcasts to discuss"; and the "post named the minor and used photos of the minor without that minor's consent, in an effort to advance her political agenda." *Id.* The resolution found Rep. Libby's conduct "to be reprehensible and in direct violation of our code of ethics," which requires legislators to "be ever mindful of the ordinary citizen who might otherwise be unrepresented" and "endeavor conscientiously to pursue the highest standards of legislative conduct inside and outside of the State House." *Id.* It further found that Rep. Libby "conducted herself in a manner incompatible with her duty and responsibilities as a Member of this House and the public trust and high standards incumbent in that office." *Id.* The resolution provides that Libby "must accept full responsibility for the incident and publicly apologize to the House and to the people of the State of Maine" and "must comport herself in a manner that pursues the highest standards of legislative conduct." *Id.*

51.    In introducing the resolution, Majority Leader Rep. Matt Moonen (D-Portland) accused Rep. Libby of "creat[ing] an intentionally inflammatory post on social media about a Maine

high school athlete, who is a minor, at a recent track event." *Archived Hearings & Meetings: House Chamber* 5:57:35-6:01:06 PM, Me. Leg. (Feb. 25, 2025, 10:00 AM), https://bit.ly/43tBMp4 (Hearing). He emphasized that "[t]he post then went viral online and generated tens of thousands of comments," and then Rep. Libby "continued to bring national media attention" to the issue. *Id.* In other words, it was the favorable coverage Rep. Libby generated that was the problem.

52.    In response, Minority Leader Rep. Billy Bob Faulkingham (R-Winter Harbor) argued "the legislative code of ethics has no guidelines referring to online or social media posts" and "[t]he post in question does not even violate Facebook's community standards." *Id.* at 6:01:13-6:03:48 PM. He characterized the resolution as "a mockery of the censure process," "set[ting] a standard that says that the majority party, when they're displeased with a social media post that upsets them, can censure a member of the minority party and by a majority vote, censure them and, without them giving an apology, keep them out of the Legislature." *Id.* He observed none of the three prior censures in the history of the Maine Legislature targeted speech or conduct outside the statehouse. *Id.*

53.    Two of the three prior censures came last year, again by the Maine Democrat Majority against Republicans for disfavored speech. But all involved speech on the House floor, in the statehouse, or to other legislators, not a duly elected representative's speech on a matter of public concern directly to her constituents. The House censured two Republicans over statements on the House floor claiming that the 2023 Lewiston mass shooting was God's response to a recent abortion law that took effect the same day, which violated "the decorum of the House." H.R. Res. 1, 131st Leg., 2d Reg. Sess. (Me. 2024), https://perma.cc/8YC3-6RY3; H.R. Res. 2, 131st Leg., 2d Reg. Sess. (Me. 2024), https://perma.cc/S63W-3XJF; *see* Legis. Rec. H-1723-1724, 131st Leg., 2d Reg. Sess. (Me. 2024), https://perma.cc/BG6W-SVTU. The third prior censure came in 2001 when a male representative who "verbally abused a female Senator in the hallway outside of the chamber of the House," "followed her to the Senate offices where he continued to verbally abuse the Senator," and

"verbally abused" "another female Senator [who] attempted to intervene." Legis. Rec. H-145-49, 120th Leg., 1st Reg. Sess. (Me. 2001), https://perma.cc/GL5C-FVY7.

54.     Rep. Jennifer L. Poirier (R-Skowhegan), who opposed the resolution, raised free-speech concerns and emphasized that the student's identifying information and image were publicly available on the internet before Rep. Libby ever posted on Facebook. *Id.* at 6:06:53-6:09:23. She observed that Rep. Libby would not have been censured had she posted the student's photograph and name with sentiments of congratulations. *Archived Hearings & Meetings: House Chamber*, *supra*, at 6:07:37-6:07:52.

55.     Rep. Poirier also requested clarification for other representatives "who may have reposted Representative Libby's social media post," asking whether they can "expect censures to come forth on them as well." *Id.* at 7:11:58-7:12:12. Speaker Fecteau responded, "I'm not aware of any other censures." *Id.*

56.     Members repeatedly interrupted Rep. Libby as she attempted to speak on the House floor in defense of herself and her post. *Id.* at 6:15:45-6:21:36. Rep. Libby emphasized that the track and field state championship "was a public event" and the male student's "photos are posted publicly on multiple websites." *Id.* at 6:27:27-6:28:15. She explained that "folks are upset about this post" because it "exposed truth" that "there are boys participating in girls' sports" and "taking the place of girls." *Id.* at 6:28:17-6:30:00.

57.     After the House passed the censure resolution, Speaker Fecteau summoned Rep. Libby to the well of the chamber, lectured her on the House's ethics standards, and offered her an opportunity to apologize. Rep. Libby declined. Speaker Fecteau then found Rep. Libby in violation of House Rule 401(11). *Id.* at 7:08:20-7:11:15.

58.    Under Rule 401(11), a member who "is guilty of a breach of any of the rules and orders of the House … may not be allowed to vote or speak, unless by way of excuse for the breach, until the member has made satisfaction." H.R. Rule 401(11), 132nd Leg. (Me.).

59.    The censure of Rep. Libby thus deprives her of the ability to speak or vote on the House floor on behalf of her 9,000 constituents in House District 90.

60.    The censure served no legitimate legislative purpose. The censure of Libby concerned speech that occurred *outside the statehouse* to her constituents on social media. *See* Nat'l Conf. of State Legis., *Mason's Manual of Legislative Procedure* §561(3) (2010) ("Whatever is spoken *in the house* is subject to the censure of the house." (emphasis added)). Thus, unlike the three prior censures in the nearly 200-year history of the Maine House, Libby's speech did not disrupt the order or decorum of the House. *Cf. id.* §123(4) (providing for censure under section titled "Use of Disorderly Words in Debate").

61.    Speaker Fecteau posted about the censure on Facebook: "Tonight the House held a vote to censure Representative Laurel Libby. Sharing images of kids online without their consent is a clear violation of the bond of trust and respect between citizens and their Legislators." Speaker Ryan Fecteau, Facebook (Feb. 25, 2025), https://perma.cc/9WXN-2SQK.

62.    Yet Speaker Fecteau is guilty of the very conduct he criticized and found worthy of censure. He has posted many photos of minors on Facebook to score political points. On information and belief, Speaker Fecteau did so without the minors' consent.



Speaker Ryan Fecteau, Facebook (Feb. 9, 2019), https://perma.cc/G956-KWKL.



Speaker Ryan Fecteau, Facebook (Jan. 18, 2020), https://perma.cc/SU2G-9VMA.



Speaker Ryan Fecteau, Facebook (Nov. 7, 2019), https://perma.cc/9FWD-56TC.



Speaker Ryan Fecteau, Facebook (Feb. 14, 2019), https://perma.cc/RPG4-KKMG.

*Public Backlash*

63.     The censure of Rep. Libby drew swift condemnation in media across the country. *E.g.*, Carine Hajjar, Opinion, *A new low for free speech: Democrats strip voting rights from Maine state representative over post on trans athletes*, Bos. Globe (Feb. 28, 2025), https://perma.cc/9QVJ-8CLU; Editorial Board, Opinion, *Maine's Transgender Madness*, Wall St. J. (Feb. 28, 2025), https://perma.cc/PV8B-MTFQ.

64.     Congressmembers, national free-speech organizations, and other prominent figures criticized the censure and expressed support for Rep. Libby. *E.g.*, @tedcruz, X (Feb. 26, 2025, 1:09 AM), https://perma.cc/352E-7N42; @Speech_First, X (Feb. 26, 2025, 11:44 AM), https://perma.cc/4CN4-PXPQ; @Riley_Gaines_, X (Feb. 25, 2025, 8:03 PM), https://perma.cc/9FP7-Z397; @Liz_Wheeler, X (Feb. 25, 2025, 9:17 PM), https://perma.cc/LUT7-NGKL; *see also* Daniel Ortner, *Maine's censure of lawmaker for post about trans student-athlete is an attack on free speech*, FIRE (Mar. 7, 2025), https://perma.cc/3ZU4-DBLU.

65.     On March 1, the first day of women's history month, hundreds of Mainers descended on Augusta to march in protest of Maine's transgender sports policy, some holding signs in support of Rep. Libby. *See* Jacob Murphy, *Hundreds rally in Augusta to oppose Gov. Mills, transgender athletes in women's sports*, WMTW (Mar. 1, 2025), https://perma.cc/4MC7-2G7G; *'March Against Mills' Draws Large Protest to Augusta*, Me. Wire (Mar. 3, 2025), https://perma.cc/DW3L-RCGD; @TheMaineWire, X (Mar. 1, 2025, 11:11 AM), https://bit.ly/41Ip9oY.

66.     On March 3, 2025, in her first comments to reporters after her tense exchange with President Trump, Governor Mills refused to take a stance on Maine's transgender sports policy. "If [lawmakers] wish to change it, they have the authority to change it, but you don't change it by executive order or by wishing it differently," she said. "It's worthy of a debate, a full, democratic debate." Shepherd, *supra* note 1.

*Disenfranchisement of Rep. Libby's Constituents in House District 90*

67.    The House's censure excludes Rep. Libby from any further "democratic debate" over Maine's transgender sports policy. The day after Rep. Libby's censure, Rep. Liz Caruso (R-Caratunk) announced a bill to reverse Maine's transgender sports policy. *Maine Republican introduces bill to ban transgender athletes from girls' sports teams*, Spectrum News (Feb. 26, 2025), https://perma.cc/33LT-CJAL. Titled "An Act to Ensure Equity and Safety in Athletics, Restrooms, Changing Rooms and Housing at Elementary, Secondary and Postsecondary Schools," the bill would require "[i]nterscholastic or intramural athletic teams and sports … must be expressly designated … based on sex" and provides that "[a]thletic teams or sports designated as 'females,' 'women,' or 'girls' may not allow participation by students who are male." L.D. 868, 132nd Legis., 1st Reg. Sess. (Me. 2025), https://perma.cc/UVH3-XNGA. But because of the censure, Rep. Libby, one of the House's staunchest advocates on the issue, is barred from speaking on the floor or voting on the bill.

68.    In addition, on March 4, 2025, Rep. Reagan Paul (R-Winterport) presented a joint order and moved its passage for "the Joint Standing Committee on Education and Cultural Affairs shall report out, to the House, a bill that prohibits an educational institution in this State that receives state funds from being a member of or paying dues or fees to an organization that does not prohibit biological males from participating on teams in sports designated for 'girls' or 'females.'" H.P. 500, 132nd Legis., 1st Reg. Sess. (Me. 2025), https://perma.cc/H3TB-BRMM; *see Media Streaming: House Chamber* 11:45:29-11:51:56 AM, Me. Legis. (Mar. 4, 2025), https://bit.ly/3Dmgpvt (Rep. Paul: "This is not just about women's sports; it's about protecting fairness, reality, and the very foundation of competition. Truth isn't optional, and biology is not just an obstacle to be ignored, or dare I say pole-vaulted over."). Because of the censure, Rep. Libby and her constituents in House District 90 will be deprived of any voice or vote on any such bill.

69.     In addition to the above, the ongoing Maine legislative session features votes on numerous issues of public importance, including the State budget and the availability of funding for mental and other health services.

70.     Rep. Libby has sponsored or cosponsored resolutions proposing constitutional amendments concerning state elections and bills concerning Sunday closing laws, tobacco taxes, paid family and medical leave, public records requests, and consumer energy and electricity costs. The Defendants' unlawful actions deprive her of her ability to vote on these issues, should they come to the House.

## CLAIMS FOR RELIEF

### COUNT I
**Free Speech**
**42 U.S.C. §1983; U.S. Const. Amends. I, XIV**
**Rep. Libby against Defendants**

71.     Plaintiffs repeat and reallege each of their prior allegations.

72.     The Free Speech Clause of the First Amendment to the U.S. Constitution, applicable to the States through the Fourteenth Amendment, prohibits the government from "abridging the freedom of speech." U.S. Const. amend. I; *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

73.     "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (cleaned up).

74.     Rep. Libby's social media posts about the Maine girls indoor track and field state championship and the intrusion of men and boys in women's and girls' sports is constitutionally protected speech on a matter of public concern.

75.     Barring Rep. Libby from speaking or voting on the House floor is a materially adverse action that prevents Rep. Libby from doing her job, interferes with her ability to adequately perform

her elected duties, and denies her privileges of the office to which she was duly elected by the people of Maine.

76.    Rep. Libby was retaliated against because of her speech and would not have been censured but for her speech.

77.    The proffered reasons for censuring Rep. Libby—minor students' privacy and safety concerns—are false and a sham to cover the unlawful motive to retaliate against her because of her speech about men and boys who identify as transgender participating women's and girls' sports, her criticisms of Maine's transgender sports policy, and the national media attention she attracted.

78.    Rep. Libby has suffered and will suffer irreparable harm absent injunctive and declaratory relief against Defendants.

**COUNT II**
**Equal Protection**
**42 U.S.C. §1983; U.S. Const. Amend. XIV**
**All Plaintiffs against Defendants**

79.    Plaintiffs repeat and reallege each of their prior allegations.

80.    "[T]he right to vote—the wellspring of all rights in a democracy—is constitutionally protected." *Bonas v. Town of N. Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001).

81.    The Constitution "protects the right of all qualified citizens to vote" in state elections, and the Equal Protection Clause requires that "all who participate in the election are to have an equal vote." *Reynolds v. Sims*, 377 U.S. 533, 554, 557-58 (1964).

82.    Equal protection applies to "the initial allocation of the franchise" and "the manner of its exercise." *Bush v. Gore*, 531 U.S. 98, 104 (2000) (per curiam).

83.    Plaintiffs voted in the 2024 election for House District 90.

84.    Barring Rep. Libby from speaking or voting on the House floor dilutes Plaintiffs' 2024 election votes in violation of the Equal Protection Clause's "one person, one vote" principle.

85.    Barring Rep. Libby from speaking or voting on the House floor disenfranchises Plaintiffs and the 9,000 Mainers in House District 90.

86.    Barring Rep. Libby from speaking or voting on the House floor dilutes Plaintiffs' vote and disenfranchises them through "arbitrary and disparate treatment." *Bush*, 531 U.S. at 104-05.

87.    Plaintiffs have suffered and will suffer irreparable harm absent injunctive and declaratory relief against Defendants.

**COUNT III**
**Due Process**
**42 U.S.C. §1983; U.S. Const. Amend. XIV**
**All Plaintiffs against Defendants**

88.    Plaintiffs repeat and reallege each of their prior allegations.

89.    "[T]he due process clause of the fourteenth amendment prohibits action by state officials which seriously undermine the fundamental fairness of the electoral process." *Duncan v. Poythress*, 657 F.2d 691, 700 (5th Cir. Unit B Sept. 1981).

90.    Electors have a "right … to vote and to have their votes counted." *Marks v. Stinson*, 19 F.3d 873, 889 (3d Cir. 1994). Thus, "rejection of a ballot where the voter has been effectively deprived of the ability to cast a legal vote implicates federal due process concerns." *Id.* Due process is denied where "the election process itself reaches the point of patent and fundamental unfairness." *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978). Where "organic failures in a state or local election process threaten to work patent and fundamental unfairness, a colorable claim lies for a violation of substantive due process." *Bonas*, 265 F.3d at 74. A "total and complete disenfranchisement of the electorate as a whole is patently and fundamentally unfair" and thus "constitute[s] a violation of due process." *Id.* at 75. It necessarily follows that an ex post deprivation of representation in the Legislature works the same harm.

91.    Barring Rep. Libby from speaking or voting on the House floor excludes her from the office to which she was duly elected by the people of Maine's House District 90, even though she

satisfies the standing requirements for a person to serve as a member of the Maine House set forth in the Maine Constitution. *See* Me. Const. Art. IV, Pt. 1, §4; *cf. Powell v. McCormack*, 395 U.S. 486, 550 (1969).

92.    Barring Rep. Libby from speaking or voting on the House floor constitutes a de facto expulsion from the office to which she was duly elected by the people of Maine's House District 90 without "the concurrence of 2/3" members, as required by the Maine Constitution. Me. Const. Art. IV, Pt. 3, §4.

93.    Barring Rep. Libby from voting on the House floor deprives Plaintiffs and voters in House District 90 of their right to vote for a state representative.

94.    Canceling Rep. Libby's representative votes on the House floor in violation of the Maine Constitution's provisions for House membership violates due process.

95.    Plaintiffs have suffered and will suffer irreparable harm absent injunctive and declaratory relief against Defendants.

### COUNT IV
### Republican Guarantee
### 42 U.S.C. §1983; U.S. Const. Art. IV, §4
### All Plaintiffs against Defendants

96.    Plaintiffs repeat and reallege each of their prior allegations.

97.    The U.S. Constitution "guarantee[s] to every State in this Union a Republican Form of Government." U.S. Const. art. IV, § 4.

98.    "[T]he distinguishing feature of that form is the right of the people to choose their own officers for governmental administration, and pass their own laws in virtue of the legislative power reposed in representative bodies, whose legitimate acts may be said to be those of the people themselves." *Duncan v. McCall*, 139 U.S. 449, 461 (1891). "[W]hile the people are thus the source of political power, their governments, national and state, have been limited by written constitutions, and

they have themselves thereby set bounds to their own power, as against the sudden impulses of mere majorities." *Id.*

99.     "The Guarantee Clause is best understood as protecting basic rights of political participation within state governments." Erwin Chemerinsky, *Cases Under the Guarantee Clause Should Be Justiciable*, 65 U. Colo. L. Rev. 849, 867 (1994). "[T]he key features of a republican form of government are a right to vote and a right to political participation." *Id.* at 868.

100.     The Guarantee Clause "presupposes the continued existence of the states and … those means and instrumentalities which are the creation of their sovereign and reserved rights." *Printz v. United States*, 521 U.S. 898, 919 (1997).

101.     Barring Rep. Libby from speaking or voting on the House floor—stripping her of her most important responsibilities as an elected representative and denying her privileges of the office to which she was duly elected—deprives Plaintiffs of representation in the House and thus presents a real threat to the constitutionally guaranteed republican form of government.

102.     "A republican form of government can only be preserved by securing to its electors the right to select their [representatives] by ballot, for terms fixed in advance by the Legislature of the state." *Bd. of Elections for Franklin Cnty. v. State ex rel. Schneider*, 191 N.E. 115, 120 (Ohio 1934).

103.     Plaintiffs and the 9,000 Mainers of House District 90 elected Rep. Libby to a two-year term through 2026.

104.     Barring Rep. Libby from speaking or voting on the House floor deprives Plaintiffs of representation in the House, disenfranchises 9,000 Mainers in House District 90, and deprives them of their ability to elect their own representatives to exercise legislative power and pass laws.

105.     Barring Rep. Libby from speaking or voting on the House floor constitutes a de facto expulsion from the office to which she was duly elected by the people of Maine's House District 90

without "the concurrence of 2/3" members, as required by the Maine Constitution. Me. Const. Art. IV, Pt. 3, §4.

106.    Barring Rep. Libby from speaking or voting on the House floor excludes her from the office to which she was duly elected by the people of Maine's House District 90, even though she satisfies the standing requirements for a person to serve as a member of the Maine House set forth in the Maine Constitution. *See* Me. Const. Art. IV, Pt. 1, §4; *cf. Powell*, 395 U.S. at 550.

107.    While some Guarantee Clause claims have been held to be nonjusticiable, the Supreme Court has been clear that the Guarantee Clause is a critical protection of the people in our Constitution and that there remain claims that could be justiciable. *See New York v. United States*, 505 U.S. 144, 184-85 (1992); *see also Largess v. Supreme Jud. Ct. for the State of Mass.*, 373 F.3d 219, 229 (1st Cir. 2004) (per curiam) (observing "several members of the Supreme Court have suggested that federal courts can indeed review the internal allocations of power in a state government under the text of this clause" (citing *Bush*, 531 U.S. at 112 (Rehnquist, C.J., concurring, joined by Scalia and Thomas, JJ.))). The "unusual and extreme" circumstances here present such a justiciable claim for "the federal courts to enforce the Guarantee Clause." *Largess*, 373 F.3d at 229. A State has no republican form of government when it has stripped an elected legislator—the main ingredient of any republican form of government—of her right to speak and vote on behalf of her constituents contrary to the state's constitutionally prescribed rules for what makes a qualified legislator and requirement of two-thirds vote for expulsion.

108.    Plaintiffs have suffered and will suffer irreparable harm absent injunctive and declaratory relief against Defendants.

## PRAYER FOR RELIEF

Plaintiffs respectfully request the following relief:

A.      A declaratory judgment that the censure of Rep. Libby and application of House rules prohibiting her from speaking on the House floor and voting on behalf of her constituents is unlawful retaliation, in violation of the First and Fourteenth Amendments of the U.S. Constitution;

B.      A declaratory judgment that the censure of Rep. Libby and application of House rules prohibiting her from voting on behalf of her constituents of the House District 90 violates the Equal Protection, Due Process, and Guarantee Clauses of the U.S. Constitution;

C.      Injunctive relief prohibiting Rep. Libby from being barred from speaking on the House floor;

D.      Injunctive relief prohibiting the disregard and non-counting of Rep. Libby's votes cast on behalf of House District 90 constituents;

E.      An award of attorney's fees, costs, and expenses under 42 U.S.C. §1988; and

F.      Any other legal or equitable relief the Court may deem just and proper.

Dated: March 11, 2025

Taylor A.R. Meehan*
Daniel M. Vitagliano*†
Consovoy McCarthy PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
taylor@consovoymccarthy.com
dvitagliano@consovoymccarthy.com

*Certificates for admission *pro hac vice* pending
†Supervised by principals of the firm admitted
to practice in VA

Respectfully submitted,

*/s/ Patrick Strawbridge*
Patrick Strawbridge (Bar No. 10024)
  *Lead Counsel*
Consovoy McCarthy PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

*Counsel for Plaintiffs*

28

## VERIFICATION

I am over the age of 18 and am a Plaintiff in this action. I declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that I have read the foregoing VERIFIED COMPLAINT, and the factual allegations thereof, and that to the best of my knowledge the facts alleged therein are true and correct.

Dated: March 11, 2025

/s/ *Laurel D. Libby*


Per Local Civil Rule 10, Plaintiffs' counsel retains a paper copy of this verification bearing an original signature, available for future production.
/s/ *Patrick Strawbridge*